HELANE L. MORRISON (State Bar No. 127752)
ROBERT L. MITCHELL (State Bar No. 161354)
MICHAEL S. DICKE (State Bar No. 158187)
PATRICK THOMAS MURPHY (Admitted in NY)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CHRISTINE B. HOBERG,<br><br>　　　　Defendant. | Civil Action No.  C 03 4135 HRL<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

**SUMMARY**

1.　　This matter concerns fraudulent financial reporting by Christine B. Hoberg, former Chief Financial Officer of Nvidia Corporation ("Nvidia" or the "Company").  In early 2000, Nvidia, a Silicon Valley high technology company, negotiated with one of its suppliers to obtain more than $3 million in cost savings for the quarter ended April 30, 2000.  As part of these negotiations, Nvidia agreed to repay the cost savings to the supplier through artificially higher prices on future purchases.  Although the two transactions were negotiated in tandem, Hoberg directed that Nvidia document the deals separately.  She then directed that Nvidia record more than $3 million in cost savings in its

results for the quarter ended April 30, 2000, without also recording the liability Nvidia had incurred to repay this amount in the future.

2. By recording the cost savings without recording the corresponding liability to pay higher prices in the future, Hoberg caused Nvidia to violate generally accepted accounting principles ("GAAP"). Hoberg also caused Nvidia to overstate materially its gross profit and net income for the quarter ended April 30, 2000 in both a press release and in public documents filed with the Commission.

3. In April 2002, Nvidia restated its financial results for the quarter ended April 30, 2000. As part of the restatement, Nvidia reversed the previously recognized cost savings from its supplier. The restatement revealed that, as a result of Hoberg's misconduct, Nvidia's originally reported results for the April 30, 2000 quarter overstated its gross profit by 6.4% and its net income by 15.3%.

4. By improperly inflating Nvidia's financial results for the April 30, 2000 quarter, Hoberg violated the antifraud and other provisions of the federal securities laws. The Commission seeks a court order enjoining Hoberg from future violations of these provisions, prohibiting her from serving as a director or officer of any company whose shares are registered with the Commission, directing her to disgorge all amounts she received as a result of her violations plus prejudgment interest, and ordering her to pay civil money penalties.

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

5. The Commission brings this action pursuant to Section 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)]. This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa].

6. Hoberg made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the acts, practices and courses of business and transactions alleged herein.

7. This district is an appropriate venue for this action under Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the transactions, acts, practices and courses of business constituting the violations alleged herein occurred with the Northern District of California.

8. Assignment to the San Jose Division is appropriate pursuant to Civil Local Rule 3-2(e) because a substantial part of the events that gave rise to the claims occurred in Santa Clara County, California.

## DEFENDANT

9. **Christine B. Hoberg**, age 48, resides in Los Altos, California. She was the Chief Financial Officer of Nvidia from December 1998 until April 2002 when she was placed on administrative leave. Hoberg resigned her employment on July 31, 2002. Hoberg is a Certified Public Accountant licensed by the State of California. As Chief Financial Officer of Nvidia, Hoberg had overall responsibility for the company's financial books and records, financial reporting and fiscal management.

## OTHER RELEVANT ENTITY

10. **Nvidia Corporation** is a Delaware corporation headquartered in Santa Clara, California. It develops and markets graphics processors and media and communications devices. Nvidia's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act and is quoted on the NASDAQ Stock Market.

## FACTUAL ALLEGATIONS

11. In early 2000, Nvidia's internal forecasting identified that the Company was lagging behind expectations for its financial results for the quarter ended April 30, 2000, the first fiscal quarter of Nvidia's fiscal year 2001. In order to address this anticipated shortfall, Nvidia's senior management immediately focused the Company on reducing costs for the quarter in order to bolster gross margins and net income.

12. Nvidia's largest source of costs during that quarter was for money due to the companies that manufactured and packaged Nvidia's graphics chips. Accordingly, in order to address its earnings shortfall, Nvidia began to negotiate with one of those companies ("Nvidia's supplier") to reduce costs by approximately $3 million for the quarter ended April 30, 2000.

13. In March 2000, Nvidia employees held meetings and made several requests to Nvidia's supplier to reduce costs for the current quarter. These employees communicated with Hoberg and other senior executives, who ensured that the amount of cost savings sought from Nvidia's supplier was directly correlated to the amount required to address the forecasted income, earnings per share and gross margin shortfalls for the quarter. Hoberg directed that the amount of cost savings from Nvidia's supplier needed to be approximately $3 million.

14. In response to Nvidia's requests, on March 30, 2000, Nvidia's supplier forwarded a written proposal to Nvidia. This initial proposal offered to grant the cost reductions requested by Nvidia by providing credits for costs of materials owed by Nvidia to Nvidia's supplier in the current quarter. In return, Nvidia would reimburse the credits by agreeing to pay higher prices for other goods ordered from Nvidia's supplier later in the year. The proposal called this a "cost transfer." Specifically, this proposal stated that Nvidia's supplier would "agree to credit Nvidia $3M for cost transfer from Q1 2000 to August 2000 . . . [and that] Nvidia [would] agree to re-pay the $3M back to [Nvidia's supplier] in August 2000 by means of a . . . total price adjustment [of] $3,037,500."

15. This written proposal was forwarded by email to Hoberg from an Nvidia employee, seeking her review and approval. Responding by email, Hoberg wrote "can not sign this or have this in print. Will wipe out the credit in Q1. [N]eed to arrange this separately and trust us to abide by it."

16. Under GAAP, and specifically Statement of Financial Accounting Standards No. 5, paragraph 8, Nvidia's explicit agreement to repay the costs to its supplier created a liability that Nvidia was required to record in its accounting records. Thus, under GAAP, the recording of the liability would offset the credits.

17. By documenting the entire transaction in one document, it would be clear that the cost savings portion of the deal should be offset by Nvidia's promise to repay in the future. Instead, Hoberg directed that the deal be split into two separate agreements. In the first agreement, signed on April 3, 2000 by an Nvidia employee under the supervision of Hoberg, Nvidia agreed to pay increased prices to the supplier in August 2000 in the total amount of $3.3 million. In the second agreement, signed by Nvidia's supplier on April 4, 2000, the supplier granted credits and cost waivers to Nvidia in the amount of $3.3 million for the April 30, 2000 quarter.

18. At Hoberg's direction, at the close of Nvidia's fiscal quarter ended April 30, 2000, Nvidia recorded on its books the $3.3 million in credits granted by the April 4th agreement, but did not make any offsetting entry for the obligation to pay higher prices in August 2000.

19. In early May 2000, Nvidia's independent auditors conducted a quarterly review of Nvidia's financial records. As Hoberg was aware, Nvidia presented the April 4th agreement as support for reducing its quarterly costs by $3.3 million. However, Hoberg did not inform the auditors of Nvidia's April 3rd agreement to pay higher prices on future purchases from its supplier.

20. By recording the cost savings without also recording the offsetting agreement to pay the same amount in higher prices in the future, Hoberg caused Nvidia to overstate its gross profit and income before taxes by $3.3 million for the quarter ended April 30, 2000.

21. On May 16, 2000, Nvidia issued a press release reporting record financial results for the quarter ended April 30, 2000. The reported results exceeded analysts' expectations for gross margin and net income. On June 14, 2000, Nvidia included its financial results for the April 30, 2000 quarter in a Form 10-Q filed with the Commission, which Hoberg signed.

22. On April 29, 2002, following the completion of an internal investigation by its audit committee, Nvidia restated its financial results for the quarter ended April 30, 2000. As part of the restatement, the previously recognized $3.3 million in cost reductions from Nvidia's supplier was reversed.

**FIRST CLAIM FOR RELIEF**
*Violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder*

23. The Commission realleges and incorporates by reference Paragraphs 1 through 22 above.

24. During the relevant period, Hoberg, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails, intentionally or recklessly:

    (a) employed devices, schemes, or artifices to defraud;

    (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading; and

   (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

25. Hoberg has violated, and unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF
*Violations of Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13b2-2*

26. The Commission realleges and incorporates by reference Paragraphs 1 through 22 above.

27. By engaging in the conduct described above, Hoberg knowingly circumvented or knowingly failed to implement a system of internal controls, and knowingly falsified Nvidia's books, records and accounts. In addition, Hoberg omitted facts that caused statements made to Nvidia's auditors in connection with an examination of Nvidia's financial statements to be materially misleading.

28. Hoberg has violated, and unless restrained and enjoined, will continue to violate Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Rules 13b2-1 and 13b2-2 , 17 C.F.R. § 240.13b2-1 and 17 C.F.R. § 240.13b2-2.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

I.

Permanently enjoin Hoberg from violating Sections 10(b) and 13(b)(5) of the Exchange Act and Rules 10b-5, 13b2-1, and 13b2-2 thereunder.

II.

Permanently enjoin Hoberg from serving as an officer or director of any entity having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C.

§78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)].

III.

Order Hoberg to disgorge any wrongfully obtained benefits, including prejudgment interest.

IV.

Order Hoberg to pay civil penalties under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VI.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  September 11, 2003              Respectfully submitted,

/s/ Patrick Thomas Murphy____
Patrick Thomas Murphy
Attorney for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION