*E-filed 1/30/07*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>CHRISTINE B. HOBERG,<br><br>　　　　　　Defendant. | Case No. 03-04135 HRL<br><br>**INTERIM ORDER ON PLAINTIFF'S MOTION TO DISBURSE PAYMENTS TO THE TREASURY** |

　　　In September 2003 the Securities and Exchange Commission ("the Commission") brought this action against Christine Hoberg ("Hoberg"), alleging that Hoberg violated the antifraud and other provisions of the federal securities laws in her capacity as Chief Financial Officer of NVIDIA Corporation ("NVIDIA"). In brief, the Commission alleged that Hoberg arranged a fraudulent "cost transfer" scheme with one of NVIDIA's suppliers whereby costs would appear lower in one fiscal quarter only to be raised in a subsequent fiscal quarter. This caused NVIDIA's income and profits to appear artificially high in the fiscal quarter ending in April 2000. In September 2003, this court signed a stipulated Final Judgment against Hoberg, providing for various injunctive relief as well as monetary disgorgement and civil monetary penalties. That money, along with pre- and post-judgment interest, now totals $721,877.35 and is being held by the court. The Commission explains that the disgorgement and prejudgment interest payments were based on a percentage of the proceeds Hoberg derived from selling

1   36,874 shares of NVIDIA stock on the open market in the 90 day period following NVIDIA's
2   announcement of inflated earnings for the fiscal quarter ending in April 2000.  The Final
3   Judgment Order provided that the Commission could later propose a disbursement plan for
4   court review.  The Commission now moves to disburse these funds directly to the United States
5   Treasury, arguing that it would be too difficult and too expensive to locate and compensate
6   those individual investors harmed by Hoberg's fraudulent financial reporting.  Hoberg does not
7   oppose this motion.  A hearing was held on January 30, 2007.

8       This court reviews the Commission's plan to disburse the disgorged funds under its
9   general equitable powers to ensure that the plan is "fair and reasonable."  *Securities and*
10  *Exchange Comm. v. Wang*, 944 F.2d 80, 81 (2d. Cir. 1991).  "Disgorgement is designed to
11  deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by
12  making violations unprofitable."  *Securities and Exchange Comm. v. First Pacific Bancorp*, 142
13  F.3d 1186, 1191 (9th Cir. 1998).  Thus, compensation of injured investors is not the primary
14  goal.  See, e.g., *Securities and Exchange Comm.  v. Commonwealth Chemical Securities, Inc.*,
15  574 F.2d 90, 102 (2d Cir. 1978).  It is within the court's discretion to order that disgorged funds
16  be used to compensate securities fraud victims.  *Securities and Exchange Comm. v. Henke*, 275
17  F.Supp.2d 1075, 1083 (N.D. Cal. 2003) (citation omitted).  There is, however, no statutory
18  requirement to that effect.  *Securities and Exchange Comm. v. Lorin*, 869 F.Supp. 1117, 1129
19  (S.D.N.Y. 1994).  Instead, disgorged proceeds may be given to the United States Treasury
20  where, for example, (1) numerous victims suffered relatively small losses, (2) the victims
21  cannot be identified, or (3) there are no victims entitled to damages.  *Id.* at 1129 (reviewing
22  multiple authorities).

23      In the present matter, the Commission contends that identifying potential injured
24  investors would require retaining a distribution consulting firm to send notices to all brokerages
25  that placed buy orders for the stock during the relevant period.  Once potential claimants were
26  found, the distribution firm would have to send out claim forms and then determine each
27  buyer's pro rata share.  De minimis claims would have to be excluded.  The SEC argues that
28  this process would be very difficult six years after the trades were made, and concludes that

administrative expenses would likely consume large amounts of the fund, resulting in meaningful recoveries for only a small number of investors.

Although the Commission's arguments seem plausible, the court is not yet satisfied by its showing. The only quantitative fact provided is that NVIDIA's average trading volume was over five million shares daily during the relevant 90 day period. The Commission makes no attempt to estimate the number of potential claimants, the dollar amount of the average claim, or administrative costs. This is not a situation where a trustee has attempted to locate claimants but eventually concluded that further efforts are economically infeasible. Rather, the Commission thinks the process will probably be difficult and thus it would rather not make the attempt. (For example, the Commission fails to explain why a trustee should not be appointed in this case, while such a course of action has been followed in other cases.) The court is not prepared to disburse the $721,877.35 to the United States Treasury until the Commission provides a better estimate of the expense and difficulty involved in compensating injured investors. Hopefully, the Commission's in-house resources may suffice. The defendant should help if she can. Reasonable expenses incurred by the Commission on this task may be reimbursed from the fund. The court ORDERS the Commission to file a supplemental declaration responding to this order by March 6, 2007.

**IT IS SO ORDERED**.

Dated:   1/30/07



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

3

Notice will be electronically mailed to:

Leigh Aimee Kirmsse kirmssel@howrey.com, wortmans@howrey.com

Helane L. Morrison morrisonh@sec.gov, uclusinw@sec.gov

Patrick Thomas Murphy murphyp@ sec.gov

John S. Yun yunj@sec.gov, johnstonj@sec.gov

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.