MARC J. FAGEL
JOHN S. YUN (yunj@sec.gov)
PATRICK T. MURPHY (murphyp@sec.gov)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2600
San Francisco, California 94104
Telephone: (415) 705-2500
Telecopy: (415) 705-2501

*E-filed 5/30/08*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SECURITIES AND EXCHANGE COMMISSION, )
)
Plaintiff, )
)
vs. )
)
CHRISTINE B. HOBERG )
)
Defendant, )
)

Civil Action No.
C-03-04135-HRL

[PROPOSED] ORDER APPROVING PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S PLAN TO DISTRIBUTE CHRISTINE B. HOBERG PAYMENTS TO INVESTORS

Date: N.A.
Time: N.A.
Judge: Howard R. Lloyd
Courtroom: 2

# ORDER APPROVING DISTRIBUTION PLAN

Pursuant to Local Rule 7-11 of the Northern District of California, plaintiff Securities and Exchange Commission ("Commission") applied for this Court's approval of the plan of distribution of the payments by defendant Christine B. Hoberg ("Hoberg"). Previously, in its Order of April 19, 2007, the Court rejected the transfer Hoberg's payments to the United States Treasury and directed the Commission to engage Rust Consulting, Inc. to develop a proposed plan of distribution to the net purchasers of nVIDIA stock. In accordance with the Order, the Commission retained Complete Claims Solutions, LLC, which is a subsidiary of Rust Consulting to develop a Plan of Distribution for the Hoberg payments. The proposed Plan of Distribution provides that investors who made net purchases of nVIDIA common stock during the "Recovery Period" of May 16, 2000 to August 14, 2000 and who submit a timely "Proof of Claim Form" shall receive a pro rata share from the distribution of the Hoberg payments, minus funds used for administrative costs and tax liabilities. This proposed Plan of Distribution is consistent with the Order directing the Commission to distribute the Hoberg payments to net purchasers of nVIDIA stock.

r -- the proposed Plan of Distribution that was prepared by Complete Claims Solutions and that is attached as Appendix 1. The Court also approves the form of the proposed Notice To Claimants that is attached as Appendix 2 and the form of the proposed Proof of Claim Form that is attached as Appendix 3.

SO ORDERED.

DATED: May 30, 2008

HOWARD R. LLOYD
United States Magistrate Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DISTRICT

SECURITIES AND EXCHANGE COMMISSION,
    Plaintiff

vs.

CHRISTINE B. HOBERG,
    Defendant.

Civil Action No. C 03-4135 HRL

## DISTRIBUTION PLAN

**A.  Introduction**

The Court's Final Judgment, dated September 18, 2003 ("Final Judgment"), provided for the establishment of a fund to distribute the payment made by defendant Christine B. Hoberg ("Hoberg") in satisfaction of the consent judgment obtained by the Securities and Exchange Commission ("Commission"). The Final Judgment further contemplated that this fund would be distributed to injured investor victims, in accordance with the Fair Fund provision of Section 308(a) of the Sarbanes-Oxley Act of 2002. To accomplish this distribution, the Final Judgment contemplated the appointment of a Distribution Agent to oversee the Fair Fund distribution process, based upon a plan of distribution proposed by the Commission and approved by the Court.

**B.  Definitions**

As used in this Distribution Plan, the following definitions shall apply:

1.  "Approved Claim" shall mean the final amount of a Potentially Eligible Claimant's asserted claim that is approved pursuant to this Distribution Plan.

2.  "Available Distribution" shall mean the Fair Fund, less any amounts expended or to be expended for administering the Fair Fund (e.g., reasonable fees and expenses incurred or to be incurred in administering this Distribution Plan tax payments, reserves for taxes and fees of the Tax Administrator).

3.  "Claims Bar Date" shall mean the date established in accordance with this Distribution Plan by

which a Potentially Eligible Claimant's Proof of Claim Form must be received by the Distribution Agent to avoid the barring of any right of the Potentially Eligible Claimant to participate in any distribution from the Fair Fund. The Claims Bar Date shall be one hundred eighty (180) days after the first publication of the Distribution Plan Notice.

4. "Claims Packet" shall mean all the materials to be provided to Potentially Eligible Claimants known to the Distribution Agent or to those who request such, including a copy of the Distribution Plan Notice and a Proof of Claim Form (together with instructions for completion of the Proof of Claim Form).

5. "Determination Notice" shall mean the notice sent by the Distribution Agent to a Potentially Eligible Claimant stating the Distribution Agent's determination of the validity of the claim of the Potentially Eligible Claimant.

6. "Distribution Agent" shall refer to the entity responsible for administering the Fair Fund, in accordance with the terms of this Distribution Plan and the Court's orders, as well as its employees, attorneys, accountants and other agents.

7. "Distribution Plan" shall mean this Distribution Plan in the form approved by the Court.

8. "Distribution Plan Notice" shall mean the notice given to Potentially Eligible Claimants of their potential right to participate in the distribution of the Fair Fund and their obligation to file a Proof of Claim Form in order to so participate. The Distribution Agent shall design the Distribution Plan Notice, consistent with the provisions of this Distribution Plan, and such notice shall include, at a minimum, the names of the Eligible Securities, means of obtaining Claims Packets (including Proof of Claim Forms), instructions for submitting Proof of Claim Forms, and the Claims Bar Date. The Distribution Plan Notice shall advise Potentially Eligible Claimants that by participating in the distribution of the Fair Fund, they will not be releasing any rights or claims they may have against any other party, including, but not limited to, Nvidia Corporation's past and present directors, officers, advisors and agents (other than with respect to the Distribution Agent).

9. "Eligible Claimants" shall mean those Potentially Eligible Claimants filing a Proof of Claim

Form with the Distribution Agent on or before the Claims Bar Date who are finally determined by the Distribution Agent to be eligible for a distribution from the Fair Fund as provided herein because they purchased and held Eligible Securities during the Recovery Period. "Eligible Claimants" in no event shall include:

    a.    any Person who assigned that Person's right to obtain a recovery in the Commission's lawsuit against Hoberg;

    b.    any assignee of another Person's right to obtain a recovery in the Commission's lawsuit against Hoberg, provided, however, this provision shall not be construed to exclude those Persons who obtained such a right by inheritance or devise.

Notwithstanding anything to the contrary in this paragraph, a Person determined not to be an Eligible Claimant pursuant to Subparagraph a or b above with respect to a particular Eligible Security may, subject to the requirements of this paragraph, be an Eligible Claimant with respect to other Eligible Securities that Person may own.

    10.    "Eligible Loss Amount" shall refer to the amount of loss an Eligible Claimant has incurred through the purchase of an Eligible Security during the Recovery Period. The Eligible Loss Amount for Nvidia common stock shall be calculated as follows:

For purposes of determining which shares of Nvidia stock purchased during the Recovery Period were: (i) sold at a profit at any time during the Recovery Period, (ii) sold at a loss at any time during the Recovery Period, or (iii) were retained past August 14, 2000, all sales of Nvidia stock shall be matched on a "first-in, first-out" ("FIFO") basis against prior purchases during the Recovery Period; sales of Nvidia stock during the Recovery Period where there has been no prior purchase during the Recovery Period (other than short sales) will be ignored for computing Recognized Losses or offsetting profits. This matching under FIFO shall be done irrespective of the different accounts in which the Nvidia stock was purchased and sold unless the ownership of the accounts differed.

    11.    "Eligible Security" shall refer to all common stock issued by Nvidia Corporation.

    12.    "Fair Fund" shall refer to all proceeds of Hoberg's payment of cash in satisfaction of the Final

Judgment, including accumulated interest, appreciation, and earnings thereon, plus any additions thereto as may be provided by future Court Order or agreements in related cases or otherwise, minus any tax payments.

13.     "Fair Fund Escrow Fund" shall mean the cash or cash-equivalent portion of the Fair Fund, which shall be held in escrow by the Distribution Agent in an account or accounts established by the Distribution Agent for the purpose of effectuating this Distribution Plan. The Fair Fund Escrow Fund shall include any accumulated interest and earnings thereon, minus costs, fees, tax payments and other expenses paid or reimbursed pursuant to orders of the Court. It is anticipated that distributions to Eligible Claimants shall be made from the Fair Fund Escrow Fund.

14.     "Recovery Period," for the purposes of this Distribution Plan, shall mean the period of time commencing on May 16, 2000 and continuing through the close of the markets on August 14, 2000.

16.     "Person" shall mean natural individuals as well as legal entities, such as, corporations, partnerships, and governmental entities.

17.     "Potentially Eligible Claimants" shall mean those Persons identified by the Distribution Agent as having possible claims to the Fair Fund under this Distribution Plan, or Persons asserting that they have possible claims to the Fair Fund under this Distribution Plan.

18.     "Proof of Claim Form" shall mean the form designed by the Distribution Agent in accordance with this Distribution Plan for the filing of proof of a Potentially Eligible Claimant's claim. A form that will require, at a minimum, sufficient documentation reflecting the Potentially Eligible Claimant's purchases and dispositions of all Eligible Securities during the Recovery Period.

19.     "Recognized Loss" shall mean the portion of the price of each share of Nvidia common stock that resulted from the alleged fraudulent statements about the company's financial results identified in the Commission's complaint.

C.     **Allocation Among Eligible Claimants**

1.     The Available Distribution shall be distributed to pay Eligible Claimants as provided under the terms of this Distribution Plan. Generally, an Eligible Claimant's Eligible Loss Amount is the sum total of the

claimant's Recognized Losses per share multiplied by the number of shares associated with each transaction.

2. If the Available Distribution is greater than or equal to the total amount of money due Eligible Claimants, the Distribution Agent shall distribute to each Eligible Claimant its Eligible Loss Amount.

3. Should the total amount of the money due Eligible Claimants exceed the Available Distribution, the Distribution Agent shall distribute the funds to the Eligible Claimants *pro rata* based upon the ratio of the Approved Claim of each Eligible Claimant to the aggregate Approved Claims of all Eligible Claimants.

4. If, after the Distribution Agent makes the distribution to Eligible Claimants, there are remaining funds in addition to tax reserves, those funds shall be paid directly to the general fund of the United States Treasury or in accordance with a final plan of residual distribution to be proposed by the Commission and approved by the Court.

**D.   Administration of the Claims Procedure**

*General Administrative Provisions*

1. Approval of this Distribution Plan by the Court authorizes the Clerk of the Court, and the Clerk of the Court is hereby ordered, to transfer all monies in the Fair Fund, less any lawful fees and tax payment requested by the Tax Administrator prior to transfer, to the Distribution Agent in such amounts and manner as the Distribution Agent shall designate in writing.

2. Upon receipt of the monies from the Court's registry in this matter, the Distribution Agent shall sign a receipt acknowledging the receipt of the funds and deposit those monies into the Fair Fund Escrow Fund, which the Distribution Agent will establish and maintain as a separate account or accounts. All accounts maintained by the Distribution Agent for the Fair Fund Escrow Fund shall bear the name of the QSF: "SEC Nvidia Investor Fund (2000)" and the taxpayer identification number of the QSF. The Distribution Agent shall then file the signed receipt with the Court and supply a copy of that receipt to counsel for the Commission in this matter within ten days of receipt of the monies.

3. The Distribution Agent shall forthwith invest and reinvest the assets in the Fair Fund Escrow Fund with a view toward: first, conserving and preserving the principal; and second, maximizing investment

return. The Distribution Agent may invest and reinvest the assets of the Fair Fund Escrow Fund only in direct obligations of the United States of America ("United States"). Under no circumstances will the Distribution Agent invest the assets of the Fair Fund Escrow Fund in products which include repurchase agreements or other derivative products related to Direct Obligations of the United States of America. The Distribution Agent shall provide duplicate original bank and/or investment statements to the Tax Administrator on a monthly basis and shall assist the Tax Administrator in obtaining mid-cycle statement, as necessary.

4. The Distribution Agent shall oversee the administration of the claims, procedures and distribution as provided in this Distribution Plan. The Distribution Agent shall review the claims of Potentially Eligible Claimants and make determinations under the criteria established herein as to the eligibility of Potentially Eligible Claimants to recover monies and the amount of money to be distributed from the Fair Fund to Eligible Claimants in accordance with the provisions of this Distribution Plan.

5. The Distribution Agent will provide customer support and a communications program which will become active before the first publication of the Distribution Plan Notice occurs. These services will include a toll free telephone number and a public website for the Fair Fund. The staff of the Commission will be given an opportunity to review and approve any telephone scripts and any material posted on the website.

6. Any claim asserted by a Potentially Eligible Claimant shall be in writing and shall provide adequate documentary evidence to substantiate the claim, including all documentary evidence which the Distribution Agent deems necessary or appropriate, including, but not limited to, available account statements and trade confirmations.

7. All claims must be verified on the basis of a sworn affidavit or declaration executed by the Potentially Eligible Claimant under penalty of perjury under the laws of the United States of America.

8. No Approved Claim less than $10.00 will be paid. The Distribution Agent may aggregate the accounts held by a Person and his or her IRA for purposes of meeting the $10.00 floor on distributions. Notwithstanding the aggregation of individual accounts with IRA accounts for this purpose, all payments shall be made to the beneficial owner and shall respect the manner in which an account is nominated. For example,

Jane Smith may aggregate her personal accounts with her IRA account to meet the $10.00 floor on distributions. However, the payment to Jane Smith will be made to her for her personal account(s) and to the Custodian of her IRA for her IRA account(s). With respect to a Person that is a corporation or partnership, such Person's accounts and Person's Affiliates' accounts may also be aggregated. The Distribution Agent in its exclusive discretion may, for purposes of this paragraph, but shall not have an obligation to, aggregate accounts not designated for aggregation in a Proof of Claim Form.

9.  For tax qualified retirement plans, the Distribution Agent shall distribute directly to the custodian or fiduciary of the retirement plan. The distribution shall be accompanied by a list of plan participants and the number of shares owned by the plan participants, if that information is known to the Distribution Agent or available from the data provided to the Distribution Agent. The intermediary of the retirement account or qualified plan shall distribute the funds in a manner that is consistent with its fiduciary duties and the account or plan provisions.

10. In cases where an omnibus account would receive less than $1,000 if it were treated as an individual, the Distribution Agent may give the omnibus provider a choice of either refusing the distribution or applying any distribution technique that the omnibus provider, in the exercise of its reasonable discretion, deems to be consistent with its fiduciary, contractual, or other legal obligations.

11. All determinations of the Distribution Agent that are made in accordance with the provisions of this Distribution Plan shall be final, unless otherwise provided in this Distribution Plan.

12. To carry out the purposes of this Distribution Plan, the Distribution Agent is authorized to make adjustments to the Distribution Plan that are consistent with the purposes of the Distribution Plan, if agreed upon by the Distribution Agent and the staff of the Commission.

*Identification of and Notice to Eligible Claimants*

13. The Distribution Agent shall, insofar as is practicable, use its best efforts to identify Potentially Eligible Claimants from a review of trading records and any other commercially reasonable sources available to the firm.

14. Within thirty (30) days following the entry by the Court of an order approving this Distribution Plan, the Distribution Agent shall publish a copy of the Distribution Plan Notice at least once in the national edition of Investor's Business Daily. The Distribution Agent will also give additional notice of the distribution process in such manner as the Distribution Agent, in its sole discretion, deems appropriate, including: direct notification to custodians, securities brokers and dealers identified by the Distribution Agent, and notice on websites relating to private litigation arising from the fraud described in the Commission's complaints in this action.

15. Within thirty (30) days following the entry by the Court of an order approving this Distribution Plan, the Distribution Agent shall cause to be mailed by United States First Class Mail a Claims Packet consisting of the Distribution Plan Notice and Proof of Claim Form, together with instructions for completion of the Proof of Claim Form, to those Potentially Eligible Claimants known to the Distribution Agent. In order to facilitate distribution of Claims Packets to Potentially Eligible Claimants, within the same time period, the Distribution Agent shall ensure that the Claims Packet in a downloadable format is available to Potentially Eligible Claimants on its website.

16. The Distribution Agent shall promptly provide a Claims Packet to any Potentially Eligible Claimant who so requests electronically, in writing or by telephone, as set forth in the Distribution Plan Notice.

17. To avoid being barred from asserting a claim, on or before the Claims Bar Date, each Potentially Eligible Claimant must submit to the Distribution Agent a properly completed Proof of Claim Form reflecting such Potentially Eligible Claimant's claim, together with all required supporting documentation. The Claims Bar Date may be extended for one or more Potentially Eligible Claimants by the Distribution Agent in consultation with the staff of the Commission, in which event such extension shall constitute the Claims Bar Date for such Potentially Eligible Claimants. Unless otherwise determined by the Distribution Agent in its sole discretion for good cause shown, any Potentially Eligible Claimant that does not file a properly completed and documented Proof of Claim Form, if so required, so that such completed form and documentation are received by the Distribution Agent on or before the Claims Bar Date shall be barred from asserting a claim against the

Distribution Agent or the Fair Fund. The burden shall be upon the Potentially Eligible Claimant to ensure that its Proof of Claim Form has been properly and timely received by the Distribution Agent.

### *Notification to Claimants of Denied Claims*

18. The Distribution Agent shall review each Proof of Claim Form to determine the validity and amount of such Potentially Eligible Claimant's Eligible Loss Amount, together with any additional conclusions of the Distribution Agent on other issues relevant to the claim. Each Potentially Eligible Claimant shall have the burden of proof to establish the validity and amount of its claim, and that it qualifies as an Eligible Claimant; and the Distribution Agent shall have the right to request, and the Potentially Eligible Claimant shall have the burden of providing to the Distribution Agent, any additional information and/or documentation deemed relevant by the Distribution Agent. On or before the Claims Determination Date, the Distribution Agent shall mail by United States First Class Mail a Determination Notice to each Potentially Eligible Claimant who has filed a Proof of Claim Form with the Distribution Agent, setting forth the Distribution Agent's conclusions concerning such claim. In the event a claim is denied, in whole or in part, the Distribution Agent will explain the reason for such denial. The Claims Determination Date shall be within thirty (30) days of the Claims Bar Date.

### *Requests for Reconsideration of Denied Claims*

19. Any Potentially Eligible Claimant that is dissatisfied, in whole or in part, with the Distribution Agent's Determination Notice concerning its claim may request reconsideration of the Determination Notice by filing a written request for reconsideration with the Distribution Agent. Such written request must be mailed by the Potentially Eligible Claimant in sufficient time that it is received by the Distribution Agent no later than fifteen days after the date on which the Determination Notice was mailed to the Potentially Eligible Claimant by the Distribution Agent; the burden of ensuring such timely receipt shall be upon the Potentially Eligible Claimant. Such written request must contain a statement as to why the Potentially Eligible Claimant believes their claim should be reconsidered and must include documentation to support the reconsideration request. A failure to properly and timely request reconsideration of the Determination Notice shall

permanently waive the Potentially Eligible Claimant's right to object or contest the Determination Notice.

*Resolution of Reconsidered Claims*

20. The Distribution Agent shall review each reconsideration request to determine whether the submitted information is sufficient to validate the claim. If the claim is determined to be valid, the Distribution Agent shall mail a Final Determination Notice to the Eligible Claimant. For any reconsideration request the Distribution Agent is unable to validate, the Distribution Agent shall prepare a summary report, with copies of the claim and all related documentation and correspondence received from the Potentially Eligible Claimant, for review by the Court. The Court will review the documentation provided by the Potentially Eligible Claimant and the Distribution Agent. At that time, the Court may make a final determination or may set the matter for hearing and at the conclusion of the hearing make a final determination. A final determination by the Court shall be final for all purposes under this Distribution Plan and there shall be no further proceedings or appeal related to the same.

22. No Potentially Eligible Claimant who has failed timely to file an appropriate Proof of Claim Form, or to request reconsideration of the Determination Notice, shall be permitted to object to the barring or treatment of its claim on the basis that the Distribution Agent failed to mail, or properly to mail, or that such Potentially Eligible Claimant failed to receive, a copy of the Distribution Plan Notice, Claims Packet or the relevant Determination Notice or Final Determination Notice, or that a Proof of Claim Form or request for reconsideration of the Determination Notice, was improperly reflected as not having been received by, or properly recorded as received by, the Distribution Agent or Court, or that a Potentially Eligible Claimant's name and/or proper contact information was not properly reflected on the Distribution Agent's records. The burden of notifying the Distribution Agent of a Potentially Eligible Claimant's current address and other contact information, and of ensuring that such information is properly reflected on the Distribution Agent's records, shall be on the Potentially Eligible Claimant.

*__Payment of Approved Claims__*

23. The Distribution Agent shall distribute the Available Distribution to all Eligible Claimants only after:

    a. all Proof of Claim Forms have been processed and all Potentially Eligible Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; and

    b. all requests for reconsideration of the Determination Notice, with respect to rejected or disallowed claims, have been resolved by the Distribution Agent or Court, or the time for such requests for reconsideration has expired.

24. Following the completion of processing of all Potentially Eligible Claimant claims, the Distribution Agent shall prepare a list of all Eligible Claimants and the Approved Claim for each Eligible Claimant. The Distribution Agent shall petition the Court for the authority to distribute a specified distributable amount from the Available Distribution to the Eligible Claimants as provided for in this Distribution Plan. In recommending such distributable amount to the Court, the Distribution Agent shall hold back a prudent reserve to take into account final fees and expenses incurred in the administration of the performance of its duties under this Distribution Plan, as well as reserves for taxes as requested by the Tax Administrator and approved by SEC staff.

25. All Fair Fund checks issued to Eligible Claimants by the Distribution Agent shall bear a stale date of ninety (90) days. Accordingly, checks that are not negotiated within this period shall be voided and the issuing financial institution shall be instructed to stop payment on those checks. Where an Eligible Claimants' check has not been negotiated within the stale date period and has been voided by the Distribution Agent, that Eligible Claimant's claim shall be extinguished upon the occurrence of the stale date. All such funds will be returned to the Fair Fund.

26. The Distribution Agent shall use all reasonable commercially available to resources to locate all Eligible Claimants whose checks are returned to the Distribution Agent undelivered.

27. All Fair Fund distribution payments shall be preceded or accompanied by a communication that includes, as appropriate:

      a. a statement characterizing the distribution;

      b. a statement from the Tax Administrator;

      c. a statement that checks will be void after ninety days; and

      d. the name of a person or entity to contact, if the Eligible Claimant has any questions regarding the distribution.

Any such communication shall be submitted to the staff of the Commission and the Tax Administrator for review and approval. The Fair Fund distribution checks, on their face, or in the accompanying mailing shall clearly indicate that the money is being distributed from a Fair Fund established by the United States Securities and Exchange Commission to compensate investors for harm as a result of their investment in an Eligible Security.

28. Upon receipt and acceptance by an Eligible Claimant of a distribution from the Fair Fund, such Eligible Claimant shall be deemed to have released all claims that such Eligible Claimant may have against the Distribution Agent, its employees, agents and attorneys in connection with the Distribution Plan and the administration of the Fair Fund, and shall be deemed enjoined from prosecuting or asserting any such claims.

29. The submission of the Proof of Claim Form and the receipt and acceptance of a distribution by an Eligible Claimant shall not affect an Eligible Claimant's rights and claims against any party (other than the Distribution Agent), including, but not limited to, Nvidia's past or present directors, officers, employees, advisors and agents.

E. **Responsibilities of the Distribution Agent**

1. It is the Distribution Agent's responsibility to distribute the Fair Fund in accordance with this Distribution Plan.

2. The Court has appointed Damasco & Associates as the tax administrator ("Tax Administrator") for this case. The Distribution Agent will cooperate with the Tax Administrator in providing any information

necessary to ensure income tax compliance. The Distribution Agent shall compensate the Tax Administrator.

3. The Fair Fund is a "qualified settlement fund" within the meaning of the regulations issued under section 468B(g) of the Internal Revenue Code of 1986, as amended. The Tax Administrator is the administrator of such qualified settlement fund, for purposes of Treas. Reg. § 1.468B-2(k)(3)(I), and shall satisfy the tax related administrative requirements imposed by Treas. Reg. § 1.468B-2, including, but not limited to:

    a. obtaining a taxpayer identification number;

    b. timely requests for funds necessary for the timely paying of all applicable taxes, the timely payment of taxes for which the Tax Administrator has received funds, and the filing of applicable returns; and

    c. fulfilling any information reporting or withholding requirements required for distributions from the Fair Fund.

4. Within twenty (20) days of each calendar quarter, or as directed by the staff of the Commission, the Distribution Agent shall file with the Court and serve on the staff of the Commission an accounting of all assets in the Fair Fund. Such an accounting shall inform the Court and the staff of the Commission of the activities and status of the Fair Fund during the requested reporting period, and shall specify, at a minimum, the location of the various accounts comprising the Fair Fund, the value of those accounts, all monies earned or received into these accounts, any monies transferred between Fair Fund accounts, funds distributed to Eligible Claimants under this Distribution Plan, and any monies expended from the Fair Fund to satisfy any fees, costs, taxes and other expenses incurred in the implementation of this Distribution Plan.

6. Within thirty (30) days of completing the distribution of the Fair Fund and prior to the discharge of the Distribution Agent, the firm shall file with the Court and serve a copy upon Commission counsel a final accounting of all monies received, earned, or spent in connection with administration of this Distribution Plan and, if appropriate, a request for approval of any unpaid fees and expenses. After providing an opportunity for

comments from the Commission, the Court shall review the reasonableness of such request. If additional payments are authorized by the Court, the Distribution Agent shall pay itself the balance owed from the Fair Fund Escrow Fund accordingly.

7. The Distribution Agent is excused from all legal requirements to post a bond or give an undertaking of any type in connection with its fiduciary duties and obligations under the Distribution Plan.

8. The Distribution Agent is entitled to rely on all outstanding rules of law and court orders, and shall not be liable to any Potentially Eligible Claimant for any action taken or omitted by them in connection with this Distribution Plan, except upon a finding by this Court that they, in bad faith or in reckless disregard of its duties under this Distribution Plan, acted or failed to act. The Distribution Agent is authorized to enter into agreements with financial institutions ("Institutions") as may be appropriate or necessary in the administration of the Fair Fund. In connection with such agreements, the Institutions shall be deemed to be agents of the Distribution Agent under this Distribution Plan, and shall be indemnified as provided in this Distribution Plan. However, such indemnification of agents of the Distribution Agent is limited to claims made by Potentially Eligible Claimants asserting a claim to a distribution under this Distribution Plan, and shall not be construed to extend to claims by governmental agencies or offices made in a capacity other than as a Potentially Eligible Claimant.

10. The Fair Fund shall indemnify the Distribution Agent and hold it harmless against any losses, claims, damages or liabilities in connection with any action taken or omitted by them in connection with this Distribution Plan, unless such losses, claims, damages or liabilities arise solely out of bad faith or reckless disregard of its duties under this Distribution Plan. Further, the Fair Fund shall advance amounts to and reimburse the Distribution Agent for all reasonable expenses (including counsel fees and expenses) incurred in connection with defending against such actions. The Distribution Agent shall be entitled to indemnification in accordance with the foregoing so long as a final, unstayed, unappealable determination has not been made by a court of competent trial and/or appellate jurisdiction that the Indemnified Party has committed acts (or omitted to act) in bad faith or in reckless disregard of its duties under this Distribution Plan.

11. The Distribution Agent may be removed at any time by the Court, and replaced with successors. In the event the Distribution Agent decides to resign, the firm must first give written notice to the staff of the Commission and the Court of such intention, and such resignation shall not be effective until the Court has appointed a successor. The Distribution Agent shall then follow such instructions as such successor or the Court gives him in turning over custody, control and management of the Fair Fund Escrow Fund and other property collected pursuant to the Distribution Plan.

12. All proceedings with respect to the administration, processing and determination of claims and the determination of all related controversies, shall be subject to the exclusive jurisdiction of this Court.

13. The Court reserves the right to amend this Distribution Plan from time to time.


SO ORDERED:

/s/ Howard R. Lloyd

Howard R. Lloyd
UNITED STATES MAGISTRATE JUDGE

Dated: May 30, 2008

THIS SHALL CERTIFY THAT NOTICE WILL BE SENT TO:

Patrick Thomas Murphy   murphyp@sec.gov
Helane Leslie Morrison   morrisonh@sec.gov
John Scott Yun   yunj@sec.gov
Michael S. Dicke   dickem@sec.gov
Leigh Aimee Kirmsee   kirmssel@howrey.com

\* Counsel are responsible for providing copies of this order to co-counsel who have not registered for e-filing.

Date:   May 30, 2008                               MPK
                                          Chambers of Magistrate Judge Howard R. Lloyd